CINTRÓN, PETITIONER, v. BERRÍOS, MAYOR OF YABUCOA, RESPONDENT.

PETITION for a Writ of Mandamus for Reinstatement as Inspector of Charities.

No. 156.—Decided January 29, 1917.

MANDAMUS—MUNICIPAL EMPLOYEE—REMOVAL FROM OFFICE—NOTICE AND HEARING—JUST CAUSE.—An inspector of municipal charities is entitled to notice and a hearing before being removed from office by the mayor for just cause, but the charges need not be made with such technical skill as is ordinarily employed by a *fiscal* in drawing up an information; nor is it necessary that all the formalities of a trial be observed.

ID.—HEARING—DEFENSE—WAIVER OR ABANDONMENT.—A hearing, as required by common justice, means that the official sought to be removed from office shall be given reasonable notice of the specific acts or omissions of which he is accused; that he be allowed a reasonable opportunity to defend himself by answering the charges and producing evidence, and that he be permitted to confront and cross-examine the witnesses against him, albeit he may waive or abandon any of these privileges.

Id.—Id.—When a person who is entitled to be heard on charges made against him is deprived of such right without cause, he should, as in this case, be granted relief by *mandamus*.

The facts are stated in the opinion.

*Messrs. Carlos Travecier* and *Víctor Burset* for the petitioner.

*Messrs. Francisco González* and *Juan B. Huyke* for the respondent.

Mr. Justice Hutchison delivered the opinion of the court.

On August 4, 1916, the petitioner, Dr. Julio Cintrón, Inspector of Charities of the Municipality of Yabucoa, addressed to the municipal council a communication in which he protested against a charge referred to as having been made in writing before that body by the *alcalde* and demanded a full investigation.

On the same day the *alcalde* requested Dr. Cintrón to answer within five days twelve more or less specific charges, notified him of his suspension from office for alleged hostility to the administration pending the clearing up of these matters ("*interin se depuran determinados hechos*") and directed him to deliver possession forthwith to the deputy inspector.

On August 7th Dr. Cintrón replied at some length.

From the minutes of the proceedings of the municipal council at a meeting held on August 15th it appears that—

"The council was informed of a communication from the inspector of charities, Dr. Julio Cintrón, requesting that a most minute investigation be made with regard to his conduct and action as director of the hospital and inspector of charities during the time he has been discharging his duties as such inspector, or from September 13th, last, to August 1st, when he acted as substitute for Dr. J. E. Berríos, and from that time up to this date in his own capacity, inasmuch as his removal from the direction of the hospital for the reason that 'it was deemed necessary for the good of the public service,' might be considered as an approval of the charges preferred against his blameless integrity by the mayor on hearsay. The council by a unanimous vote of the members present re-

solved that the matter should be postponed for consideration jointly with a communication from the mayor relative to the said official to be discussed in this session.

"The council was informed of a communication from the mayor, dated August 10, 1916, which reads as follows: 'To the Municipal Council. Gentlemen: In view of the existing differences between Dr. Cintrón, inspector of charities, and the undersigned in their official relations, I was under the necessity of suspending him from his office and filing charges against him, giving him a period of five days to answer the same; and I submit the charges, the answer and the evidence to your consideration for proper action in behalf of the public service which, in my opinion, has suffered. The documents accompanying this communication are those referred to in the preceding paragraph which I ask you to examine carefully so that you may become well acquainted with their details and then advise me as to whether or not the said official should continue in the office of inspector of charities of this municipality. If the charges which I have submitted to your consideration are not sufficient in your opinion to justify the action I have taken as to the said official I wish you would so inform me, as I have other proofs and other charges still more serious which I did not desire to use for reasons I do not wish to disclose. I believe that the director of charities has been hostile to the municipal government, not only for his lack of consideration and respect for me, but because he has disobeyed the laws enacted by you which I must enforce for the welfare of the community and also because he has disregarded other laws of a more grave nature, thus causing inconveniences to the poor that could have been avoided. As a rule I have always acted in the most harmonious manner with you and, whenever it has been possible, in accordance with your judgment; and although in this case I am authorized to act freely and independently, I desire, more than on any other occasion, considering that the matter in question has been the subject of much comment, to hear your opinion before taking any action. I desire to know your opinion without delay so that the least possible injury may be caused to the public interest and the least trouble to Dr. Berríos, who, without any compensation, is discharging the duties of Dr. Cintrón. Respectfully, José L. Berríos, Mayor.' The charges preferred by the mayor against the inspector of charities having been read and while the answer to said charges was being read, Domingo Quintana, a member of the council, took the floor and asked that the evidence be read, the

council reserving its decision as to this point for the proper occasion. After the answer of the inspector of charities had been read the petition presented by him was submitted to the council and postponed for consideration jointly with the matter under discussion; and after fully considering the same it was resolved by a majority of votes, Berríos and Rodríguez voting against Quintana and Cintrón who were of the opinion that the decision of the case should be left to the discretion of the mayor, and the chairman casting the deciding vote, that an investigation be made of the matters referred to in the documents that had been read by the members of the council present in accordance with section 20 of the Municipalities Act. Councilman Berríos asked to be excused from taking part in the investigation as he believed that in this case nothing is involved but an excess of zeal in behalf of the administration on the part of our worthy mayor, José L. Berríos, and also an excess of zeal on the part of Dr. Cintrón as inspector of charities, for in his opinion both officials are complying with their duties to the satisfaction of the people of Yabucoa, and said that he agreed with the decision simply to please his fellow-members.''

On the next day the *alcalde* again addressed the municipal council in writing as follows:

''I am aware of your action with respect to the communication I addressed you in connection with the charges presented against the inspector of charities, Dr. Cintrón, and I had the opportunity of being present and hearing what was done and said while considering the matter, and I must say to you that although personally I accept your decision without any hesitation, so much so that I offer you to pay a stenographer myself so that the investigation be a most strict one and that a memorandum be taken of everything said, I, as mayor and executive head of the municipal government, regret your action, as my object in addressing you was to perform an act of courtesy, giving you a good opportunity to consider the reasons I had to suspend Dr. Cintrón from office, as well as those I intend to use should I conclude to remove him from office under the powers conferred upon me by the law, and in furtherance of the public service. As I cannot revoke the action taken without causing injury to my reputation and I am of those who only adopt an important procedure because it has been studied carefully, and am not afraid of the results but on the contrary calmly and firmly await the judgment of the people, I beg to say through you

to Mr. Berríos that I wish him to accept my thanks if he so kindly considered my action as the result of an excess of zeal, but he must believe that from the warm defense by him of Dr. Cintrón the fact that I am unjust is inferred and I cannot admit such remark without making a protest and must positively say that if said gentleman is a good physician or a professional eminence and sustained the hospital in good conditions that were notably improved due to his zeal, your aid and that of others I do not wish to mention, he is a man who thinks that because he is a professional man those who have no profession are inferior to him even in the administrative branch of the government; and probably for this reason he has been a bad employee, having forgotten many things that is to be regretted. You must admit that it is indispensable for a good administration that there should exist the greatest solidarity between the chief and the employees; that harmony among those who work towards the same end should be perfect. You must consider that it is impossible for a punctilious mayor, without losing his reputation as such mayor, to accept the refusal of an inspector of charities, his subordinate, to assist poor sick persons who have the misfortune of being under the necessity of claiming their right to such service under the law. That you must consider as an intolerable impertinence for a person who deems himself entitled to respect and consideration and who, due to his official position, is vested with authority, the rough and incorrect manners put in practice by Dr. Cintrón in his official correspondence with the mayor. That you must consider that public officials are servants of the people who not only must act properly in their relations with the people but that even by appearances should not give rise to any gossip because it is in detriment of the good name that all governments deserve, and that even if no crime is inferred which may be punished by the Penal Code from the proofs presented in support of the charges preferred, the fact is clear that it has given rise to gossip in a reproachful and prejudicial manner for the administration, and that it has been caused by the inspector of charities. I must say that I have not entered into the merits of the facts, searching for proofs to make stronger those that exist, as indeed I have not tried to establish the commission of any crime, but facts sufficient which may clearly give an exact idea of the official relations between the inspector of charities and the head of the administration, the mayor, and how the ordinances enacted by you are respected by him who is bound to enforce and require compliance thereof so that the legislative power that has been entrusted to you the com-

mand of the law of this Island may become stronger. I must, therefore, beg to request you to examine carefully in an unbiased manner and with serene judgment the letters I have written to Dr. Cintrón and the answers thereto; and if from them and other of his letters and documents which appear in the proceedings submitted to you is not logically inferred that there is deep antagonism between the inspector of charities and the mayor; that much has been said that causes damage to the good name of the administration; that the laws of the municipality enacted by you have been really and positively disobeyed, and that no. consideration has been paid to the unfortunate poor people who have been in need of a physician, then the investigation be proceeded with, giving me the opportunity to attend the same and clear up some obscure things, with the powers granted by the Municipalities Act, and that it should not be understood that I abandon my rights in the principal matter, namely, the separation of Dr. Cintrón from the office of inspector of charities which he still holds.''

On September the 14th the *alcalde* signed the following:

''*Decision*.—In view of the facts originating the charges presented by the office of the mayor against the inspector of charities of the municipality, and it appearing from said proceedings that Doctor Julio. Cintrón has failed to comply with the duties imposed upon him by the laws and the municipal ordinances by refusing to assist sick persons who are insolvent, and that he has also employed disrespectful forms and unjust and incorrect language in his official correspondence with the mayor, using also improper methods in the discharge of his duties as such employee. It appearing that said Doctor Cintrón, in answering the charges made against him, has not overcome any of them, either in his answer or by presenting any evidence to make it stronger. Whereas, it is indispensable for a good administration that all the employees and subordinates strictly comply with the duties entrusted to them, and that there always should be the greatest solidarity between the head of the administration and his subordinates. Whereas, it is impossible for a punctilious mayor to. permit, without losing his reputation as such mayor, that one of his employees refuse to comply with the duties appertaining to his office and he use rough and incorrect forms in his official relations, thus showing no consideration and respect for the mayor to which he is entitled by reason of the authority vested in him. Whereas, public employees are servants of the peo-

ple, and in their relations with the same not only should act properly but that even by appearances should not give rise to gossip as it is in detriment. of the good name deserved by all government. Whereas, although the matter to which this resolution refers was submitted to the municipal council whose opinion was requested as to same and this body not having taken any action thereon the delay in its decision causes great damage to the good course of the affairs of the municipal administration. Wherefore, the undersigned mayor, acting under the provisions of section 32 of the Municipalities Act and the ordinances in force defining the duties of municipal employees of Yabucoa, P. R., decides to remove, and does hereby remove, from the office of inspector of charities of this municipality Doctor Julio Cintrón for the above reasons, and directs that this decision be notified to the interested party who at present is suspended from office, the said separation to take effect from today.''

The minutes of a meeting held on September 26th show that—

''The council was informed of the communication from the mayor dated September 14, 1916, which reads as follows: 'To the Municipal Council. Gentlemen: In view of the fact that the time passes and no action is taken on the matter of the inspector of charities, Mr. Cintrón, which might cause damage to the progress of the administration, I have decided to remove him from office as I am thoroughly convinced that he is a bad employee for this municipality. Respectfully, José L. Berríos, Mayor.' The council having been informed, and this being a matter of the exclusive jurisdiction of the mayor, resolves to approve the action taken by the said official. The chairman moves the council that it be spread on the minutes of this session that Dr. Cintrón may avail himself of the right granted him by the law if he deems it convenient to do so. The motion having been duly seconded by councilman Berríos and discussed, was submitted for decision, councilmen Cintrón and Sostres voting against the same and Rodríguez abstaining from voting, said motion obtaining, therefore, the votes of the chairman and of Berríos.''

Three days later Dr. Cintrón filed his petition for a mandamus directing his immediate restoration to office.

It seems that the members of the committee named to investigate the charges, instead of proceeding at once with the investigation, undertook, through personal conferences

with the *alcalde* and with the inspector of charities, to bring about some sort of a compromise. At the suggestion of the *alcalde* and after some argument as to duration the inspector finally consented to ask for a vacation or leave of absence for a period of fifteen days. This, he claims, was a final compromise and settlement of the whole controversy, while the theory of the *alcalde* is that it was merely a sort of temporary truce granted for the sole purpose of giving the doctor time to meditate. However this may be, and the point is not important but is mentioned merely by way of explaining the delay on the part of the council and the connection of the *alcalde* therewith, the doctor was promptly removed when he attempted to resume the duties of his position at the expiration of the period so fixed by mutual agreement.

The evidence adduced also includes a voluminous correspondence between the *alcalde* and the inspector beginning in October, 1915, with the mild discussion of certain unimportant differences of opinion in regard to minor details of an administrative sort, gradually waxing warmer as well as more personal in tone and culminating in an *ex parte* investigation of a number of things by the *alcalde* in June, 1916, a copy both of the correspondence and of the statements of the witnesses examined without the formality of an oath having been transmitted by the *alcalde* to the council together with the charges above mentioned based thereon. But in the view we take of the matter we are not now concerned with either the literary or the intrinsic merits of this war of words.

In *Belaval v. Todd,* 22 P. R. R. 590, we pointed out that a superintendent of municipal hospitals is entitled to both notice and a hearing before his removal from office by the *alcalde* "for just cause." We then said:

"Dependent upon the form of the statute and the character of the employees, there is a tendency in most of the States to require a proceeding similar to a trial wherein the official or employee is given an opportunity to defend and present proof; and this opportunity generally must be given even if the question of the weight

of the proof, or whether the proof is sufficient or not, rests solely in the discretion of the board or person removing the official; in other words, the official or person about to be removed must be given an opportunity to defend himself before the person or the board having power to make such removal."

It is true that the charges need not be formulated with such technical skill as ordinarily would be displayed by a *fiscal* in drawing an information; nor, as we also intimated in the case last above mentioned, is it necessary that all the formalities of a trial be observed. An *alcalde*, for example, could hardly be expected to scrutinize the evidence with regard to its admissibility so closely, nor to adhere so rigidly to the details prescribed by the Code of Criminal Procedure as might be required of a district or municipal judge in his conduct of the trial in a criminal case.

But a hearing implies, and the dictates of common justice demand, that the official sought to be removed shall be put upon reasonable notice of the specific acts or omissions with which he is charged, that he be given a reasonable opportunity to defend himself and, if he so desires, to be confronted with and permitted to cross-examine the witnesses against him.

The rule as gathered from the best authorities is well stated by Judge Dillon in his work on Municipal Corporations, Vol. II (4th ed.), p. 810, sec. 482, as follows:

"There must be *a charge,* or charges, against him, *specifically stated,* with substantial certainty; yet the technical nicety required in indictments is not necessary. And *reasonable time and opportunity must be given to answer* the charges and to produce his testimony; and he is also entitled to be heard and defended by counsel, and to cross-examine the witnesses, and to except to the proofs against him. If the charge be not denied, still it must, if not admitted, be examined and proved. But the technical rules that have been judicially adopted with reference to criminal prosecutions are not to be applied to these investigations, for while it is proper that proceedings to deprive persons of common rights for alleged crimes should be confined within strict limits, the removal of incompetent

or ill-behaved officials from their positions of authority and responsibility should be easy and prompt, and no forms should be requisite which are not in themselves substantial safeguards of justice.''

No doubt the official under fire may, if he choose, waive any of these privileges, but there seems to be no question of any such waiver in this case. The first complaint of the *alcalde* apparently was made before the municipal council and thereupon petitioner, waiving formal notice thereof, forthwith demanded in writing a full investigation of the matter. When notified subsequently of the twelve so-called charges he promptly replied in detail to each of same and, the whole matter having been laid before the council by the *alcalde,* the council having ordered an investigation, naming its committee, and such committee having taken the matter up personally both with the *alcalde* and the inspector of charities, the latter had a right to expect, if the matter were not dropped as he claims to have understood it would be, that the formal investigation would proceed. If by his failure in answering the charges again to demand an investigation and an opportunity to examine the witnesses produced against him and to introduce evidence in his own behalf he might be deemed to have waived his privilege, yet the *alcalde* failed to take advantage of that circumstance at the time but elected rather to refer the whole matter to the council and subsequently to ratify and acquiesce in the action of that body in ordering an investigation and in appointing its committee for that purpose. It follows as to this phase of the case that the *alcalde* is quite as effectively estopped to act without the formality of a hearing as petitioner might have been to demand it if the *alcalde* had proceeded at once to remove him on receipt of his answer to the questions propounded in the communication of August 4th. We mention this in passing merely to show that the question of waiver is not necessarily involved, and we would not be understood as intimating that petitioner at any time did in fact waive his right to be heard.

In the circumstances we are constrained to hold that, aside

from any question of notice, petitioner, through no fault of his own, was deprived of his right to a hearing and should be granted the relief for which he prays.

*Petition granted.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.